**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSE CARILLO LEDESMA,** *Petitioner,* | : | **CIVIL ACTION** |
| v. | : | **No. 26-cv-8787** |
| **SECRETARY MARKWAYNE MULLIN,** ***et al.*****,** *Respondents.* | : | |

# MEMORANDUM

**KENNEY, J.** **NOVEMBER 25, 2026**

Before the Court is Petitioner Jose Carillo Ledesma's Petition for Writ of Habeas Corpus (the "Petition") (ECF No. 1). Petitioner seeks immediate release from detention pursuant to 28 U.S.C. § 2241. *See* ECF No. 1 at 2, 9. Respondents oppose any relief. *See* ECF No. 5. For the reasons set forth below, the Court will **GRANT** the Petition (ECF No. 1), and order Respondents to immediately release Petitioner from detention.

## I. BACKGROUND

Petitioner is a citizen of Mexico who entered the United States about six years ago without inspection. ECF No. 1 at 3.[1] Petitioner does not have any criminal history. *See* ECF No. 5 at 1 n.1. On November 16, 2026, around 9:50 a.m., officers of U.S. Immigration and Customs Enforcement ("ICE") arrested and detained Petitioner pursuant to 8 U.S.C. § 1226(a). *See id.* at 1; ECF No. 5-1 at 3. "ICE [o]fficers were conducting targeted enforcement operations in the Newark, DE area" when they observed a silver Chevy Silverado "leaving the WaWa parking lot."

[1] Respondents attached Petitioner's Form I-213 to their Response, which also states "[a]dmitted into the United States on or about April 20, 2025, in Tucson Arizona." ECF No. 5-1 at 2. However, it is not clear from the Form I-213 whether this entry is describing Petitioner or his brother, Ricardo Carrillo Ledesma, who was the target of the traffic stop. *Id.*

*Id.* They ran the license plate number on the Chevy Silverado and returned a result for Ricardo Carillo Ledesma, Petitioner's brother, who "was the subject of a prior voluntary return and had no valid status in the United States." *Id.* Officers followed the car and initiated a stop. *Id.* One officer approached the car and saw two individuals sitting inside. *Id.* The officer asked both individuals for identification or a driver's license. *Id.* The driver, Ricardo Carillo Ledesma, "provided a Delaware Drivers Privilege card[.]" *Id.* The passenger, Petitioner, provided a Mexican ID. *Id.* ICE officers conducted systems queries for both individuals and determined that neither "had any valid status in the United States." *Id.* Thereafter, another officer filled out a written Form I-200 Warrant on the scene and arrested both Petitioner and his brother. *See id.*; *see also* ECF No. 5-3. At the time of Petitioner's arrest, he did not have an existing Notice to Appear ("NTA"), nor was one issued on the scene. *See* ECF No. 5 at 1; ECF No. 5-2 ¶ 3.

ICE officers transported Petitioner to the Dover office and detained him. *See* ECF No. 5-1 at 3. Once they were back at the office, Petitioner was then served with another electronic Form I-200 Warrant, *see* ECF No. 5-4, and was also served with an NTA, *see* ECF No. 5-5; *see also* ECF No. 5 at 1; ECF No. 5-1 at 5; ECF No. 5-2 ¶ 3. Petitioner signed a Notice of Custody Determination, requesting that ICE's custody determination be reviewed by an immigration judge. *See* ECF No. 5-6.

After Petitioner was detained, the Petition followed. *See* ECF No. 1. In his Petition, Petitioner challenges the legality of his arrest and detention, and asserts two claims for relief pursuant to 28 U.S.C. § 2241 and the Due Process Clause of the Fifth Amendment. *See id.* at 2, 9. On November 24, 2026, Respondents filed a Response to Petition for Writ of Habeas Corpus. *See* ECF No. 5. In their Response, Respondents concede that the instant case is "substantially the same as" the circumstances that this Court addressed in *Lopez-Lopez v. Jamison*, No. 26-cv-7618,

2026 WL 3094744 (E.D. Pa. Oct. 16, 2026), and *Juarez v. Mullin*, No. 26-cv-7008, 2026 WL 2981947 (E.D. Pa. Oct. 5, 2026). *Id.* at 2. Petitioner filed a Reply in Support of the Petition on November 24, 2026. *See* ECF No. 6. The Petition is before the Court.

## II. LEGAL STANDARD

A federal district court can grant habeas relief when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Habeas is at its core a remedy for unlawful executive detention[,]" *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and is "regularly invoked on behalf of noncitizens, particularly in the immigration context." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001), *superseded by statute on other grounds*. It is Petitioner's burden to demonstrate that he is being detained in violation of the Constitution or federal law. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941). In addition, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in immigration and deportation proceedings. *See Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law—that is, a meaningful opportunity to be heard—before being deported.").

## III. DISCUSSION

### A. Administrative Exhaustion

Before seeking judicial relief, habeas petitioners "are ordinarily required to exhaust their administrative remedies." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (collecting cases); *see also Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000) ("Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241." (collecting cases)). However, exhaustion

can be excused in circumstances where (1) exhaustion "would be futile[;]" (2) "the actions of the agency clearly and unambiguously violate statutory or constitutional rights[;]" or (3) "if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). "[T]he exhaustion doctrine is not supposed to preclude judicial relief[.]" *Id.*

Under the circumstances of this particular case, exhaustion "would be futile" and the actions of ICE "clearly and unambiguously" violated Petitioner's statutory rights and implicate constitutional concerns. *Id.* As relevant here, courts have found that "[a] later bond hearing does not necessarily cure the alleged constitutional violation that preceded it." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *3 (E.D. Pa. June 17, 2026) (collecting cases). As discussed below, *see infra* at 5–9, Respondents did not detain Petitioner pursuant to a valid Form I-200 Warrant, so requiring a bond hearing at this posture would be futile in remedying Petitioner's current unlawful and invalid detention. *See Dos Reis*, 2026 WL 1746649, at *3; *see also Melendez-Guzman v. Jamison*, No. 26-cv-7556, 2026 WL 2983704, at *3 (E.D. Pa. Oct. 5, 2026) ("Petitioner alleges that he is *currently* being deprived of liberty unlawfully, so administrative processes such as a bond hearing that may become available in the future would be futile in remedying Petitioner's alleged present and ongoing constitutional deprivation."). Furthermore, requiring the Court to defer until a bond hearing has been held and an appeal has been heard before the Board of Immigration Appeals would simply delay adjudication of a "clear[] and unambiguous[]" violation of Petitioner's rights. *Lyons*, 840 F.2d at 205; *see also Almonte v. Genalo*, No. 26-cv-3633, 2026 WL 2983349, at *10 (E.D.N.Y. Oct. 5, 2026) ("It is well-settled that [p]etitioner is not required to exhaust a process that was deficient from the outset" and where "a petitioner has raised a substantial constitutional question" (internal quotations and citations omitted)); *cf. Vasquez Cruz*

*v. Jamison*, No. 26-cv-7784, --- F. Supp. 3d ----, 2026 WL 3182469, at *2 (E.D. Pa. Oct. 23, 2026) (waiving exhaustion where "there does not appear to be a way for [the petitioner] to challenge the arrest itself" before an immigration judge). Accordingly, the Court will excuse exhaustion here. *See Lopez-Lopez*, 2026 WL 3094744, at *2 (excusing administrative exhaustion under similar circumstances); *Ramos Gonzalez v. Cruz*, No. 26-cv-8300, 2026 WL 3439483, at *3 (E.D. Pa. Nov. 12, 2026) (same).

**B. Lawfulness of Petitioner's Arrest**

"As a general rule, it is not a crime for a removable [noncitizen] to remain present in the United States[,]" so officers may not arrest an individual "based on nothing more than possible removability[.]" *Arizona v. United States*, 567 U.S. 387, 407 (2012). In fact, "[i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Id.* If an officer suspects that a noncitizen is "removable, a federal official issues an administrative document called a 'Notice to Appear.'" *Id.* (first citing 8 U.S.C. § 1229(a); then citing 8 C.F.R. § 239.1(a)). The NTA "does not authorize an arrest[;]" rather, it provides the noncitizen with information about the removal "proceedings, including the time and date of the removal hearing." *Id.* (citing 8 U.S.C. § 1229(a)(1)). Accordingly, the "federal statutory structure instructs when it is appropriate to arrest [a noncitizen] during the removal process." *Id.*

Specifically, Section 236(a) of the INA provides that "*[o]n a warrant* issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added); *see also Juarez*, 2026 WL 2981947, at *2 (same). "The language of this provision is clear: Section 236(a) requires a warrant for arrest and detention." *Id.* (internal quotations and citation omitted); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (explaining that Section 1226(a)

"authorizes detention [under that section] only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest" (quoting 8 U.S.C. § 1226(a))); *Sagbay v. Jamison*, No. 26-cv-7265, 2026 WL 2875765, at *5 (E.D. Pa. Sept. 24, 2026) ("Section 1226(a) is not even triggered unless an arrest warrant is issued. . . . If the alien has not been arrested on a warrant, then the subsequent provisions giving the Attorney General discretion to detain or release the arrested alien are likewise not triggered." (internal quotations and citation omitted)). A Form I-200 is the administrative warrant that the U.S. Department of Homeland Security ("DHS") and ICE employ when arresting noncitizens under Section 1226(a). Importantly, the Form I-200 authorizes a noncitizen's arrest if it is issued "*[a]t the time of issuance of the notice to appear, or at any time thereafter* and up to the time removal proceedings are completed[.]" 8 C.F.R. § 236.1(b)(1) (emphasis added).

As this Court previously held in *Lopez-Lopez*, "[w]hen these provisions are taken together, they indicate that 'DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA.'" 2026 WL 3094744, at *3 (quoting *Vladimir G. v. Easterwood*, No. 26-cv-2971, 2026 WL 1786418, at *2 (D. Minn. June 22, 2026) (citations omitted)); *see also Vasquez Cruz*, 2026 WL 3182469, at *3 ("[W]ithout an NTA, removal proceedings are not pending, and there is no basis to issue a warrant to detain a noncitizen pursuant to Section 1226(a)."); *Islamuddin A. v. Blanche*, No. 26-cv-3340, 2026 WL 2546280, at *3 (D. Minn. Aug. 28, 2026) ("To be valid, then, a Form I-200 warrant must issue at the same time or after the Department of Homeland Security issues an NTA." (internal quotations and citations omitted)). This is because "[a] notice to appear" is a "case-initiating document"—"like an indictment in a criminal case [or] a complaint in a civil case"—and "serves as the basis for commencing a grave legal proceeding" against a noncitizen. *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (citation omitted); *see also Loaeza v. Bausch*, No. 26-cv-00945, --- F. Supp.

3d ----, 2026 WL 2150155, at *1 (W.D.N.Y. July 27, 2026) ("The Notice to Appear ('NTA') is the immigration version of a charging instrument and begins the removal process." (internal quotations and citation omitted)); 8 U.S.C. § 1229(a)(1) (explaining that noncitizens "shall" be provided with "written notice" of the "removal proceedings[,]" which is "referred to as a 'notice to appear'").

Here, Respondents have failed to properly follow this sequence. Indeed, Respondents concede as much in their briefing. *See* ECF No. 5 at 1. Based on the record before the Court, ICE officers issued a handwritten Form I-200 Warrant at the scene of Petitioner's arrest after requesting identification from him. *See* ECF No. 5 at 1; ECF No. 5-2 ¶ 2; ECF No. 5-3. However, at that time, Petitioner did not have an existing NTA and they did not issue him one contemporaneously with his arrest. *See* ECF No. 5 at 1; ECF No. 5-1 at 5; ECF No. 5-2 ¶ 3. Instead, ICE officers only generated and served Petitioner with an NTA *after* he had already been arrested and detained at ICE's Dover office. *See* ECF No. 5 at 1; ECF No. 5-1 at 3, 5; ECF No. 5-2 ¶ 3. Accordingly, as the Court found in *Lopez-Lopez* and *Ramos Gonzalez*, the Form I-200 Warrant that was used to arrest Petitioner here is invalid, which renders his arrest and detention invalid. *See Lopez-Lopez*, 2026 WL 3094744, at *4; *Ramos Gonzalez*, 2026 WL 3439483, at *4. Indeed, multiple courts within this District—in addition to many others around the country—have reached the same conclusion. *See, e.g.*, *Hernandez v. Jamison*, No. 26-cv-8112, 2026 WL 3551262, at *2 (E.D. Pa. Nov. 18, 2026) (finding that a "handwritten warrant was not valid" where it was "drafted and served before the issuance of the Notice to Appear"); *Rodriguez Martinez v. Cruz*, No. 26-cv-8396, 2026 WL 3430734, at *3 (E.D. Pa. Nov. 12, 2026) ("Because the arrest warrant was issued before the Notice to Appear, it is invalid and cannot justify [the petitioner's] detention."); *Chub Choc v. Jamison*, No. 26-cv-8177, 2026 WL 3270087, at *4 (E.D. Pa. Oct. 30, 2026) ("Warrants issued

*before* a Notice to Appear is issued are invalid"); *Garcia Arevalo v. Jamison*, No. 26-cv-7971, 2026 WL 3218224, at *4 (E.D. Pa. Oct. 27, 2026) (finding that the petitioner was arrested pursuant to an invalid warrant where the NTA was not served "until later that day"); *Vasquez Cruz*, 2026 WL 3182469, at *3 (finding that ICE "subjected [the petitioner] to an unlawful arrest based on an invalid warrant" where the Form I-200 warrant was served "before DHS issued an NTA"); *see also Lopez-Lopez*, 2026 WL 3094744, at *4 (collecting out-of-district cases). For these reasons, the Court finds that Respondents arrested Petitioner without the statutory authority to do so and unlawfully detained him in violation of the INA, which is "grounds for habeas relief." *Tabora-Brizuela v. Mullin*, No. 26-cv-7010, --- F. Supp. 3d ----, 2026 WL 2908095, at *3 (E.D. Pa. Sept. 28, 2026).[2]

Moreover, Respondents cannot fall back on their authority to detain a noncitizen without a warrant under 8 U.S.C. § 1357(a)(2). Section 1357(a)(2) gives ICE "limited authority to make warrantless arrests." *Id.* at *2 (first citing 8 U.S.C. § 1357(a)(2); then citing *Arizona*, 567 U.S. at 408). An officer is authorized to arrest a noncitizen "without [a] warrant" if the officer "has reason to believe that the [noncitizen] so arrested is in the United States in violation of" certain immigration "law[s] or regulation[s] and is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person

[2] The Court also notes that, once again, the handwritten Form I-200 Warrant that was completed at the scene of Petitioner's arrest appears to contain a false determination with respect to probable cause. The immigration officer states that he "determined that there is probable cause to believe that [Petitioner] is removable from the United States . . . based upon: the execution of a charging document to initiate removal proceedings against the subject[.]" ECF No. 5-3 at 1. But Respondents concede that Petitioner did not have an existing NTA—the charging document—when the officer filled out the handwritten Form I-200 Warrant, nor was one issued at the scene of arrest. *See* ECF No. 5 at 1; ECF No. 5-2 ¶¶ 2–3.

is likely to escape before a warrant can be obtained.”). Courts have interpreted the “reason to believe” language “as equivalent to ‘probable cause.’” *Tabora-Brizuela*, 2026 WL 2908095, at *2 (quoting *Lee v. Immigr. & Naturalization Serv.*, 590 F.2d 497, 500 (3d Cir. 1979)). The analysis of probable cause “turns on what the arresting officer knew at the time they took the individual into custody.” *Id.* (citing *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1231 (D. Colo. 2025)).

Here, there is no indication in the record that ICE officers had “reason to believe” that Petitioner was “likely to escape before a warrant [could] be obtained for his arrest[.]” 8 U.S.C. § 1357(a)(2). To the contrary, when ICE officers asked Petitioner for identification at the scene of the arrest, he complied and provided them with his Mexican ID. *See* ECF No. 5-1 at 3. There is no indication that he attempted to flee from the officers. Moreover, the fact that ICE officers issued a Form I-200 Warrant for Petitioner’s arrest at the scene further confirms that they did not intend to proceed with a warrantless arrest pursuant to Section 1357(a)(2). *See id.*; *see also* ECF No. 5-3. Section 1357(a)(2) thus does not provide a basis for Petitioner’s arrest and detention either.[3]

[3] This Court continues to see a disturbing pattern of immigration enforcement activity. Based on the record before the Court, ICE officers questioned Petitioner and asked for his identification merely because of his apparent ancestry. The Supreme Court has held that “apparent Mexican ancestry” does not “furnish[] reasonable grounds to believe” that an occupant of a car is a noncitizen. *United States v. Brignoni-Ponce*, 422 U.S. 873, 885–86 (1975). Here, “[e]ven if [the ICE officers] saw enough to think that” Petitioner was “of Mexican descent, this factor alone would [not] justify . . . a reasonable belief” that he was a noncitizen. *Id.* at 886. Apparent Mexican ancestry “standing alone . . . does not justify stopping all Mexican-Americans to ask if they are [noncitizens].” *Id.* at 887; *cf. Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (explaining that “a person’s mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search [or seize] that person”).

### C. Remedy

Respondents have violated the INA, and Petitioner is, therefore, being held "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3).[4] A federal court adjudicating a petition for a writ of habeas corpus is authorized to "dispose of the matter as law and justice require[,]" *see id.* § 2243, and has "equitable discretion to decide whether to issue the writ or to provide a remedy." *Edwards v. Vannoy*, 593 U.S. 255, 289 (2021) (Gorsuch, J., concurring). "The traditional function of the writ of habeas corpus is to secure release from unlawful executive detention." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) (citing *Munaf*, 553 U.S. at 693). Immediate release from detention is warranted in this case as a remedy. *See Lopez-Lopez*, 2026 WL 3094744, at *6 (ordering immediate release from custody where a petitioner was unlawfully arrested under § 1226(a) on an invalid warrant); *Ramos Gonzalez*, 2026 WL 3439483, at *5 (same); *Loaeza*, 2026 WL 2150155, at *2 (same).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the Petition (ECF No. 1), and order Respondents to immediately release Petitioner from detention and to certify their compliance with the Court's Order. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**

[4] The Court need not address Petitioner's arguments that his arrest and detention violate the Due Process Clause as this Petition can be decided on other grounds.